IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| RENEE ANNE W., | ) |
| | ) |
|        Plaintiff, | ) |
| | ) |
| v. | )   Case No. 19-CV-119-JFJ |
| | ) |
| ANDREW M. SAUL, | ) |
| Commissioner, Social Security Administration, | ) |
| | ) |
|        Defendant. | ) |

## OPINION AND ORDER

Plaintiff Renee Anne W. seeks judicial review of the decision of the Commissioner of the Social Security Administration denying her claim for disability insurance benefits under Title II of the Social Security Act ("Act"), 42 U.S.C. §§ 416(i), 423. In accordance with 28 U.S.C. § 636(c)(1) & (3), the parties have consented to proceed before a United States Magistrate Judge. For reasons explained below, the Court reverses the Commissioner's decision denying benefits and remands for further proceedings. Any appeal of this decision will be directly to the Tenth Circuit Court of Appeals.

**I.**     **Standard of Review**

In reviewing a decision of the Commissioner, the Court is limited to determining whether the Commissioner applied the correct legal standards and whether the decision is supported by substantial evidence. *See Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005). "Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (citing *Glass v. Shalala*, 43 F.3d 1392, 1395 (10th Cir. 1994)). A decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Hamlin v. Barnhart*,

365 F.3d 1208, 1214 (10th Cir. 2004) (quotations omitted). The Court must "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Grogan*, 399 F.3d at 1261 (citing *Washington v. Shalala*, 37 F.3d 1437, 1439 (10th Cir. 1994)). The Court may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *See Hackett v. Barnhart*, 395 F.3d 1168, 1172 (10th Cir. 2005). Even if the Court might have reached a different conclusion, the Commissioner's decision stands so long as it is supported by substantial evidence. *See White v. Barnhart*, 287 F.3d 903, 908 (10th Cir. 2002).

## II. Procedural History and the ALJ's Decision

Plaintiff, then a 53-year-old female, applied for Title II benefits on July 29, 2016, alleging an amended disability onset date of August 31, 2013. R. 158-159, 169. Plaintiff claimed that she was unable to work due to disorders including diabetes, "bilateral hands/entire arm injury," bilateral feet problems, back problems, knee problems, and depression. R. 171, 225. Plaintiff's claim for benefits was denied initially on September 26, 2016, and on reconsideration on February 16, 2017. R. 49-61; 62-75. Plaintiff then requested a hearing before an Administrative Law Judge ("ALJ"), and the ALJ conducted the hearing on February 21, 2018. R. 29-48. The ALJ issued a decision on March 13 2018, denying benefits and finding Plaintiff not disabled because she was able to perform her past relevant work as an accounting clerk. R. 11-23. The Appeals Council denied review, and Plaintiff appealed. R. 1-8; ECF No. 2.

The ALJ found that Plaintiff met the insured status requirements of the Act through December 31, 2018, and that she had not engaged in substantial gainful activity since her amended alleged onset date of August 31, 2013. R. 14, 16. The ALJ found that Plaintiff had the following severe impairments: osteoarthritis of both knees, degenerative disc disease, diabetes, and obesity.

R. 16. At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments of such severity to result in listing-level impairments. R. 18. Prior to making a step-four finding and after "careful consideration of the entire record," the ALJ found that Plaintiff retained the residual functional capacity ("RFC") to:

> [L]ift and/or carry up to 10 pounds frequently and 10 pounds occasionally; stand and/or walk for at least 2 hours in an 8-hour workday; and sit for at least 6 hours in an 8-hour workday (Sedentary work is defined in 20 CFR 404.1567(a)) except no more than occasionally kneel, crouch, crawl, and climb such things as stairs or ramps; and no more than frequently stoop.

R. 19.

Based on the testimony of a vocational expert ("VE"), the ALJ found at step four that Plaintiff is capable of performing her past relevant work as an accounting clerk. R. 22. The ALJ determined the VE's testimony was consistent with the information contained in the Dictionary of Occupational Titles ("DOT"). *Id*. The ALJ did not make an alternative step five finding. Accordingly, the ALJ concluded Plaintiff was not disabled.

## III. Issues and Analysis

Plaintiff raises two issues on appeal: (1) the ALJ committed reversible legal error by failing to properly consider the opinions of treating physician, Gerard F. Shea, D.O., and agency consultative examiner ("CE"), Bailey Runkles, D.O., and (2) the ALJ failed to properly consider Plaintiff's allegations. ECF No. 14. Plaintiff argues that the ALJ erred by failing to give specific, legitimate reasons for his rejection of the opinions of Dr. Shea and Dr. Runkles regarding Plaintiff's physical limitations, and that the ALJ further erred by failing to provide any explanation for apparent rejections of Plaintiff's complaints that were inconsistent with his RFC. For reasons explained below, the Court finds reversal warranted based on the ALJ's treatment of Dr. Shea's opinion.

### A. Legal Standard – Treating Source Opinion

Generally, the ALJ should give more weight to medical opinions from a claimant's "treating sources," which means an acceptable medical source who has had an ongoing treatment relationship with the claimant. 20 C.F.R. § 404.1527(a)(2) & (c)(2). The ALJ must give an opinion from a treating source "controlling weight," if it is both "well-supported by medically acceptable clinical and laboratory diagnostic techniques and . . . not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(c)(2); *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003).

If a treating source's medical opinion is not given controlling weight, the opinion is still entitled to deference, and the ALJ must provide "good reasons" for the weight given. 20 C.F.R. § 404.1527(c)(2). The ALJ must consider the following six factors: (1) the examining relationship; (2) the length, nature, and extent of the treatment relationship; (3) supportability of the opinion with relevant evidence; (4) consistency of the opinion with the record as a whole; (5) specialization of the medical source; and (6) any other factors that may support or contradict the opinion. 20 C.F.R. § 404.1527(c)(2)-(6). If an ALJ rejects the treating source's opinion, he must give "specific, legitimate reasons" for doing so, based on an evaluation of all the regulatory factors. *Watkins*, 350 F.3d at 1301. Although the ALJ's decision "need not include an *explicit* discussion of each factor," the record must reflect that the ALJ considered every relevant factor in the weight calculation. *Andersen v. Astrue*, 319 F. App'x 712, 718 (10th Cir. 2009). The question for the reviewing court is whether the ALJ's decision contains specific reasons that make clear the weight assigned to the medical source opinion and the reasons for that weight. *See Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1166 (10th Cir. 2012) (stating that the proper inquiry is whether the reviewing court "can

follow the adjudicator's reasoning" and "can determine that correct legal standards have been applied").

> B.  **ALJ Failed to Follow Correct Legal Standards in Considering Dr. Shea's Opinion, and Reasons Given are not Supported by Substantial Evidence**

Dr. Shea was Plaintiff's treating physician.[1]  On August 16, 2016, Dr. Shea completed a Physical Disability Parking Placard Application on Plaintiff's behalf, stating that she could not walk 200 feet without stopping to rest.  R. 245.  On May 18, 2017, Dr. Shea completed a Medical Source Opinion of Residual Functional Capacity assessment regarding Plaintiff's ability to do work-related activities.  R. 616.  Dr. Shea opined that Plaintiff could sit, stand, and walk less than two hours each of an eight-hour workday, that Plaintiff could lift and/or carry less than ten pounds, that Plaintiff could use her arms for reaching, pushing, and pulling less than two hours of an eight-hour workday bilaterally, and also use her hands for grasping, handling, fingering, or feeling less than two hours of an eight-hour day bilaterally.  Dr. Shea indicated that Plaintiff "need[ed] to rest as indicated above" due to pain.  *Id.*  Dr. Shea stated that his opinions were based on objective evidence of x-rays dated November 23, 2016, noting severe osteoarthritis, an evaluation by the Orthpaedic Center by Dr. Mittal on November 26, 2013, showing end-stage osteoarthritis in both knees, and Plaintiff's need of daily narcotic analgesic medication to "provide functionality."  *Id*.

The ALJ gave Dr. Shea's opinions "no weight" and found that "her knee issues would not affect her ability to sit for 6 hours in an 8-hour workday," and found that Dr. Shea's limitations were not supported by his own records or other medical evidence:

> On August 16, 2016, Dr. Shea completed a handicap parking placard application indicating that the claimant could not walk 200 feet without stopping to rest

---

[1] Dr. Shea is noted throughout Plaintiff's varied treatment records as Plaintiff's "Designated Primary Care Provider," including a letter from Yogesh Mittal, M.D. of The Orthopedic Center detailing Plaintiff's treatment for bilateral knee pain in 2013.  Therefore, the Court is satisfied that Dr. Shea qualifies as Plaintiff's treating physician.

5

(Exhibit 1E) [sic].² On May 18, 2017, Dr. Shea completed a medical source statement indicating that the claimant could sit/stand/walk for less than 2 hours in an 8-hour workday, lift and/or carry less than 10 pounds; use her arms for reaching, pushing, and pulling less than 2 hours in an 8-hour workday; and use her hands for grasping, handling, fingering, or feeling less than 2 hours in an 8-hour workday. Dr. Shea stated that the claimant had end-stage osteoarthritis of both knee [sic] and required daily narcotics to provide functionality (Exhibit 10F). 20 CFR 404.1527(d) states, in pertinent part, that treating source opinions are given controlling weight if they are well supported by medically acceptable clinical and diagnostic techniques and are not inconsistent with the other substantial evidence of record. The Administrative Law Judge gives no weight to Dr. Shea's opinion. Dr. Shea's [sic] attributes the claimant's inability to work to the claimant's knee; however, her knee issues would not affect her ability to sit for 6 hours in an 8-hour workday. Dr. Shea's limitations are not supported by his treatment records. Treatment records from Wah-Zha-Zhi Health Center do not show any objective findings to support Dr. Shea's extreme limitations. On the date this form was completed, there was no physical examination performed (Exhibit 11F). Social Security Ruling 96-5p states, in pertinent part, that some issues are not medical issues, but are administrative findings. An example of such an issue is what an individual's residual functional capacity is. Treating source opinions on issues reserved to the Commissioner are never entitled to controlling weight or special significance (see also 20 CFR 404.1527(e)). While the undersigned has carefully considered Dr. Shea's opinion, it is given no weight because it is in conflict with Dr. Shea's own treatment records and inconsistent with the other substantial evidence as noted above.

R. 21 (footnote added).

The ALJ failed to follow correct legal standards by failing to adequately explain or identify what treatment records from Dr. Shea are inconsistent with Dr. Shea's findings of severe limitations. The ALJ discussed some relevant treatment records in the decision. R. 20. However, in discussing opinion weight, the ALJ failed to link any of Dr. Shea's medical records to his discussion and rejection of his opinion. R. 21. The Court has attempted to connect the ALJ's opinion weight discussion with his discussion of the medical evidence but finds nothing that in the referenced records that clearly contradicts Dr. Shea's opinions or otherwise clarifies his reasoning. The ALJ's reasons for rejecting the opinion are not "sufficiently specific" to enable the Court to

---

² The correct cite is Exhibit 11E.

meaningfully review the findings. *See Langley v. Barnhart*, 373 F.3d 1116, 1123 (10th Cir. 2004) (reversing where ALJ "failed to explain or identify what the claimed inconsistencies were" between treating physician's opinion and other substantial evidence in the record); *Kellams v. Berryhill*, 696 F. App'x 909, 918 (10th Cir. 2017) (reversing where ALJ did not explain how treating physician's findings were inconsistent with treatment history).

Further, the limited reasons that were provided by the ALJ – namely, inconsistency with Dr. Shea's own treatment records and that Plaintiff's "knee issues would not affect her ability to sit for 6 hours in an 8-hour workday" – do not appear to be supported by the record. The record, considered as a whole, indicates that Plaintiff received regular care from Dr. Shea and other providers for her severe knee pain, among other health issues, from 2011 through 2017, and treatment was ongoing. R. 274-321, 322-427, 434-513, 515-516, 554-564, 618-659, 660, 661-714, 715-718. Contrary to the ALJ's assertion, Plaintiff's treatment records consistently show objective evidence of advanced osteoarthritic changes to her knees. *See* R. 498, 516, 529, 610, 611. Dr. Shea based his opinions on x-rays dated November 23, 2016, noting severe osteoarthritis, an evaluation by the Orthopedic Center by Dr. Mittal on November 26, 2013, showing end-stage osteoarthritis in both knees, and Plaintiff's need of daily narcotic analgesic medication to provide functionality. Further, a simple search reveals that symptoms related to severe osteoarthritis of the knee are manifested by "difficulty walking, climbing stairs, performing household chores, and sitting upright… Pain and stiffness in the morning, after sitting, or after prolonged rest are most common.… Joint pain and stiffness after sitting or prolonged rest typically loosen up in less than 30 minutes, known as gelling." *See* https://www.ncbi.nlm.nih.gov/pmc/articles/PMC5638628/, last visited March 27, 2020. Yet the ALJ failed to explain how he arrived at his own opinion, over Plaintiff's physician's opinions, that Plaintiff's knee issues "would not affect her ability to sit" for

prolonged periods of time. *See Robinson v. Barnhart*, 366 F.3d 1078, 1082 (10th Cir. 2004) (explaining that ALJ may not make speculative inferences from medical reports and may reject a treating physician's opinion outright only on the basis of contradictory medical evidence and not due to his or her own credibility judgments, speculation or lay opinion).

The Commissioner argues that Dr. Shea's notes generally showed Plaintiff had no edema, redness, clubbing, cyanosis, or atrophy in her arms or legs; that some notes did not address musculoskeletal findings at all; and that the May 2017 opinion lacked a contemporaneous physical examination. However, as discussed above, Plaintiff's treatment records consistently revealed complaints of bilateral knee pain; and objective x-ray testing showed end-stage, bone-on-bone osteoarthritic changes in both knees and meniscal tears in both knees. R. 498, 515-516, 529, 610, 611, 715-718. Dr. Shea, as Plaintiff's primary treatment provider, had access to all of Plaintiff's records from each of her providers. The Commissioner's argument is unpersuasive.

The ALJ also implies that Dr. Shea's medical opinion regarding Plaintiff's sitting abilities need not be given controlling weight because it is not a "medical opinion" but is instead an opinion on an issue reserved for the Commissioner. R.21. *See* 20 C.F.R. § 404.1527(d) (explaining that opinions on some issues are not "medical opinions" but instead are "opinions on issues reserved to the Commissioner because they are administrative findings that dispositive of a case; i.e., that would direct the determination of decision of disability"). This reasoning is not legitimate. Medical opinions are "statements from acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), *and your physical or mental restrictions.*" 20 C.F.R. § 404.1527(a)(1). Dr. Shea's medical opinion regarding the sitting limitation is not a final decision as to Plaintiff's RFC but is instead a medical opinion as to a physical restriction caused by her

8

knee impairment, and the ALJ erred by failing to give specific or legitimate reasons for rejecting such opinion. *See Lackey v. Barnhart*, 127 F. App'x 455, 458 (10th Cir. 2005) (explaining that underlying diagnosis of lumbar sprain associated with the MRI results, *his findings of limited range of motion*, and his prognosis that the impairment involved is permanent all fit within the definition of medical opinion rather than opinion on issue reserved to Commissioner).

Upon review of the supporting record, it is unclear how Dr. Shea's opinions are inconsistent with his own records, why a physical examination on the date of the opinion is required, and how Plaintiff's objectively diagnosed end-stage osteoarthritis rendered Dr. Shea's findings of severe work-limited limitations to be entitled to no weight. The Court finds the reasons given for rejection of Dr. Shea's treating source opinions are not "specific" or "legitimate," and that reversal is required for further clarification. *See Langley*, 373 F.3d at 1122 (finding reversal warranted where court did not find "obvious inconsistencies" between treating physician's opinion, his own treatment notes, or other evidence in the record relating to Plaintiff's limitations).

### C. ALJ's Error Was Harmful

The Court further concludes the ALJ's error is not harmless. Harmless error doctrine applies only in the "exceptional circumstance" where the court could confidently say that no reasonable administrative factfinder could have resolved the factual matter in any other way. *Allen v. Barnhart*, 357 F.3d 1140, 1145 (10th Cir. 2004). To the extent any harmless-error determination "rests on legal or evidentiary matters not considered by the ALJ, it risks violating the general rule against post hoc justification of administrative action." *Id.* Here, Dr. Shea's opinions regarding Plaintiff's physical limitations reflect functional limitations beyond those considered in the RFC, and it is unclear to the Court what medical evidence contradicts the opinions. Accordingly, the

Court cannot conclude a reasonable factfinder would reach a different conclusion if these physicians' opinions were given a greater weight.

IV. **Conclusion**

The ALJ's decision finding Plaintiff not disabled is **REVERSED and REMANDED** for proceedings consistent with this Opinion and Order. On remand, the ALJ should properly consider the relevant opinions from Plaintiff's treating physician, Dr. Shea, and any other opinion evidence as necessary, and provide legitimate reasons for the weight given to each opinion.

**SO ORDERED** this 31st day of March, 2020.

_____
**JODI F. JAYNE, MAGISTRATE JUDGE**
**UNITED STATES DISTRICT COURT**